25 C.C.P.A. (Patents)

## In re HODGSON.
### Patent Appeal No. 3954.

Court of Customs and Patent Appeals.
April 25, 1938.

Frank H. Hubbard, of Milwaukee, Wis. (J. E. Hutchinson, Jr., of Washington, D. C., and William C. Lyon, of Milwaukee, Wis., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner which rejected claims 1 to 5, in-

clusive, all of the claims of an application for a patent, on the ground that the claims define nothing patentable over either reference in view of the other.

Claim 1 is illustrative, and reads as follows: "1. In a magnetic separator pulley, the combination with a supporting shaft, of a hollow cylindrical core member arranged concentric with respect to the axis of said shaft, duplicate end pole members mounted upon said shaft and having circular flanges associated therewith secured to opposite ends of said core member and projecting outwardly therebeyond, magnet coils wound upon said core member in the space between said flanges and a tubular shell surrounding said coils and secured at opposite ends to the flanges of said end pole members to completely enclose said magnet coils."

The references cited are: Manegold, 1,527,810, February 24, 1925; Thomas, 1,948,080, February 20, 1934.

The alleged invention of appellant relates to improvements in magnetic separators of the pulley type for producing a magnetic field at the surface of a conveyor belt which passes over the pulley and carries material to be separated.

The Examiner describes the invention as follows: "The improvement consists in forming the pulley of sections which may be assembled without requiring much machining and at the same time the joints are readily made waterproof. Thus the pulley consists of two circular flanges, constituting the end pole members, provided with central hub projections bored to receive the driving shaft. The inner faces of the flanges receive a hollow core member secured to the flanges by screws. An intermediate pole member is provided, consisting of a ring mounted upon the core member and pinned thereto. The magnetizing coils are carried by the core between the end flanges and the intermediate ring. A tubular shell enclosing the assembly is welded to the flanges. To facilitate the welding operation the peripheries of the flanges are beveled."

The Manegold patent relates to magnetic separators or pulleys of the same general type and function as the pulley shown by the rejected claims. The patent discloses a supporting shaft, a hollow cylindrical core, end pole members which are circular flanges fastened to the core, and intermediate annular poles between annular magnetic coils. The patent shows that the coils are enclosed by a series of tubular shells. It seems that the essential structure of the patent differs from that of the claims only in that the end pole members of the patent are not mounted directly on the shaft, and that the tubular shell which encloses the coils is not a unit.

The Thomas patent relates to a magnetic ore separator, the operation of which includes separation in wet material. This patent discloses a shaft which carries a hub bolted to the end plates and a series of rings which are placed close together and form for all purposes a hollow core member. The rings are fastened to the end plates by bolts. Magnetic coils separated by intermediate members encircle the core member. The coils are all covered by a single tubular plate which is screwed and brazed to the end plates.

The Examiner held, and the Board affirmed the ruling, that the points of difference between the device shown in the rejected claims and those of the Manegold patent, i. e., direct mounting on the shaft of the end pole elements and the covering of the coils by a single tubular element are shown in the Thomas patent. Certainly the waterproofing of the device claimed is anticipated by the device of the Thomas patent which, operating with wet material, makes a completely water-tight covering for the coils by means of a single tube which envelopes the coils and is screwed and brazed to the end plates.

While the end plates are secured by bolts to the hub in the Thomas patent, we do not think that it makes any patentable difference that in appellant's device the plates are integral with the hubs. It was well stated in Re Bush, 46 App.D.C. 141, that: "It is elementary that the construction of parts integral, instead of by riveting, welding, or otherwise fastening them together, does not amount to invention."

If it were desired to enclose the coils of the Manegold patent with a single tubular shell, as shown in the Thomas patent, we can see no reason, as held by the Examiner and Board, why it could not be done without the exercise of the inventive faculties. In our opinion, it would be obvious to one skilled in the art to provide end pole members with hubs mounted on the shaft, as shown in the claims, instead of the construction of Manegold which provides the hollow core with hubs. This is especially true in view of the Thomas patent which discloses rings corresponding to the hollow core secured to end members which are provided with hubs secured to the shaft.

Appellant contends that the rings bolted together in the Thomas patent are not equivalent to the hollow core member of the claims herein. The only distinction apparent to us is that the core member of appellant is in one piece, while in the patent the core member is made up of several rings bolted together to form just as much of a cylinder as though it were a single piece. The hollow core member as a single unit is shown in the Manegold patent so that making the core in tubular unit form cannot be considered as novel.

Both the patents of Manegold and Thomas disclose the intermediate ring pole member shown in the rejected claims, so that adding this feature, old in the art, cannot make patentable a device otherwise unpatentable.

Appellant urges that the welding of the shell to the end pole members in his device distinguishes it from the structure of the Manegold patent. This is true enough, but the patent of Thomas discloses a tubular shell over the coils which is both screwed and brazed to the end plates. This, in our opinion, makes a device practically identical in structure to that claimed here. We are unable to perceive in what respect the welded joint of the claims defines invention over the teaching of the Thomas patent with respect to the making of a tight joint. The welding of itself, instead of screwing or riveting, would not constitute novelty. Metropolitan Eng. Co. v. Coe, 64 App.D.C. 317, 78 F.2d 201; Id., 64 App.D.C. 315, 78 F.2d 199.

Appellant's contention that beveling the faces of the flanges "provides simple and practical means for effecting proper welded connections between the shell and the flanges of the end pole members" is undoubtedly correct, but we think, as held by the Patent Office tribunals, that this is a matter of mechanical skill rather than of invention.

There is an affidavit in the record which recites the change from a certain device shown in Exhibit A, which does not appear in the record, to a structure that is now being used by appellant's assignee, which structure conforms to that disclosed in the application herein. The affidavit also states that the construction disclosed in the application was only conceived after a large amount of engineering and development work. We do not think that the change in the apparatus is proof of invention. The substituted device may be greatly superior to the one it replaced, but that is not of itself proof of invention. On the point of an improved structure, the rule of law was stated in the case of In re Rauber, 76 F.2d 304, 306, 22 C.C.P.A., Patents, 1117, where the court said that: "The old elements which appellant has combined serve no different purpose than they did in the cited patents. The mere fact, if it be a fact, that appellant has a better boiler, does not necessarily imply invention. Mechanical skill alone may assemble or combine desirable features of the prior art and obtain better results than have ever been obtained, but the patent laws afford no reward for such an improvement."

The fact that a great deal of engineering and development work was done does not assist appellant in any way if, in fact, there was no invention. In view of the prior art cited and discussed, we are unable to see that any work which was done on the device of the rejected claims can in any sense be considered to be the creative work of the inventive faculty. With respect to this, the case of In re Lawson, 36 F.2d 525, 528, 17 C.C.P.A., Patents, 743, is appropriate. In that case the court said that: "In perfecting a complicated machine, much talent may be employed and much money expended in changes and methods of construction involving only mechanical skill, which do not constitute invention."

From what has hereinbefore been said, we think it is clear that the claims herein should not be allowed as defining anything patentable over the patent of Manegold in view of the Thomas patent, or over the patent of Thomas in view of the Manegold patent.

It appears to us that the combining of the references was proper in this case. It is not necessary that a reference contain all of the features of a claim. In re Cordes, 76 F.2d 302, 22 C.C.P.A., Patents, 1158.

The decision of the Board of Appeals is affirmed.

Affirmed.